# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ALEXIS ARCHIE, VINCENT FORTADO, JEREMY HINES, STACY MCRAE, TRAVIS MORRIS, LOGAN OWENS, CHARLES THOMPSON, and MARLOWE WESTERFIELD, Individually and on Behalf of All Others Similarly Situated,<br><br>    *Plaintiffs,*<br>v.<br><br>CRAWFORD & COMPANY and CRAWFORD CATASTROPHE SERVICES, LLC,<br><br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 4:25-cv-57<br>§ Judge Mazzant<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Crawford & Company and Crawford Catastrophe Services, LLC's Motion to Compel Arbitration and Stay Proceedings (the "Motion") (Dkt. #39). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part and DENIED in part**.

## BACKGROUND

This case centers around a disagreement between employee and employer regarding unpaid overtime. Plaintiffs are individual employees who worked for Defendants Crawford & Company ("Crawford Co.") and Crawford Catastrophe Services, LLC ("Crawford CAT," collectively "Crawford") throughout 2023. In their individual capacities, Plaintiffs held jobs such as claims adjusters, team leaders, trainers, and managers (Dkt. #1 at p. 8). They were each scheduled to work for Defendants seven days a week, at a minimum of ten hours each day, from 7 a.m. to 6 p.m.

(Dkt. #1 at p. 8). These hours were a mere suggestion, however, as Plaintiffs would regularly work 85–95 hours per week, often being escorted out of the building at 10:00 p.m. by Defendants' security detail (Dkt. #1 at p. 9).

Plaintiffs allege that their hard work went underappreciated, and perhaps more importantly, underpaid, by Defendants (*See* Dkt. #1 at pp. 9-10). Specifically, Plaintiffs claim they were required to edit their timesheets to indicate that they had only worked 70 hours every week, and that any timesheet above 70 hours was manually rejected by upper management (Dkt. #1 at p. 9). As a result, Plaintiffs who worked as adjusters were only ever paid overtime up to 70 hours per week, while team leaders, trainers, and managers were reportedly paid no overtime at all (Dkt. #1 at p. 10). Plaintiffs also allege that Defendants would routinely dock pay rates on quarter day increments, even when employees only missed a few minutes of their shift (Dkt. #1 at p. 10).

On January 20, 2025, Plaintiffs filed suit against Defendants, alleging that both entities violated the Fair Labor Standards Act ("FLSA"). A few months later, Defendants filed the present Motion, seeking to compel the Plaintiffs who signed an agreement to arbitrate (the "Signatory Plaintiffs") to submit their claims to arbitration (Dkt. #39). Shortly thereafter, Plaintiffs filed their response (Dkt. #50), Defendants replied (Dkt. #51), and Plaintiffs filed a sur-reply (Dkt. #52).

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations omitted). Thus, the FAA establishes "'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Because arbitration is a creature of contract, the FAA "requires courts to enforce agreements to arbitrate according to their terms." *Id.* at 98 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Although there is a strong federal policy favoring arbitration, the policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n.5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478 (citing *Byrd*, 470 U.S. at 219). Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

Furthermore, the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry*, 586 U.S. at 65. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id.* If the Court concludes

that a contract exists and that it contains such a clause delegating the issue of arbitrability altogether, the Court must compel arbitration and allow the arbitrator to decide the issues of validity and scope. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550-52 (5th Cir. 2018); *see also Henry*, 586 U.S. at 69 ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). This "is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry*, 586 U.S. at 68.

However, "[w]hen parties dispute whether a 'non-signatory can compel arbitration pursuant to an arbitration clause,' their dispute 'questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide.'" *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (quoting *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011)). This remains especially true in Texas, where sometimes "a person who is not a party to the [arbitration] agreement can compel arbitration with one who is, and vice versa." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006). Ultimately, "[w]ho is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355 (5th Cir. 2003).

## ANALYSIS

The relevant arbitration agreements (individually, an "Agreement") in this case have not been signed by all parties. Specifically, multiple Plaintiffs and Defendant Crawford CAT have not executed an Agreement. This fact, when taken together with the pleadings as a whole, presents a total of five distinct questions for the Court to address. First, the Court must determine whether the FAA applies to the Agreement. Second, the Court must determine whether the Signatory

4

Plaintiffs and Crawford Co. have entered into a valid agreement to arbitrate, and whether the Agreement has submitted threshold arbitrability questions to the arbitrator. Third, the Court must determine whether Crawford CAT may enforce the Agreement against the Signatory Plaintiffs. Fourth, the Court is asked to detail the conscionability of the Agreement. Fifth, the Court must address the fact that multiple Plaintiffs have not signed Agreement (the "Non-signatory Plaintiffs").[1]

### I. Does the FAA apply to govern the proposed arbitration agreement?

As an initial matter, the Court must first decide whether the FAA applies to the Agreement. Defendants assert, and Plaintiffs do not dispute, that the FAA applies to this case. This matter also involves a contract made in interstate commerce, as it governs the business relationship between Texas Plaintiffs and two Defendant corporations with citizenship in different states (Dkt. #1 at p. 3). These two facts, combined with the notion that the FAA plainly applies to "a contract evidencing a transaction involving commerce," renders the FAA applicable to this case. 9 U.S.C. § 2; *see, e.g.*, *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans (HANO)*, No. 15-150, 2016 WL 153895, at *4 (E.D. La. Jan. 13, 2016).

### II. Is there a valid agreement to arbitrate the enforceability of arbitration between Plaintiffs and Crawford Co.?

The second question this Court is asked to answer conceals two distinct inquiries: (a) whether the Agreement is valid; and (b) whether the Agreement effectively submits matters of arbitrability to arbitration. "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. . . . if a valid agreement exists, *and if* the agreement

---

[1] Plaintiffs originally identified "39 Plaintiffs" in their response (Dkt. #50 at p. 3). This number grew to 40 in their sur-reply (Dkt. #52 at p. 2). At least "10 Plaintiffs are non-signatories to the Arbitration Agreement" (Dkt. #50 at p. 5).

5

delegates the arbitrability issue to arbitrator, a court may not decide the arbitrability issue." *Henry*, 586 U.S. at 69 (emphasis added) (citation omitted). Where parties utilize their arbitration agreement to delegate threshold arbitrability questions to the arbitrator by "clear and unmistakable" evidence, the Cour must honor their agreement as a matter of contract law. *Id.* at 69.

### A. Does a valid agreement to arbitrate exist?

"Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Halliburton*, 921 F.3d at 530 (5th Cir. 2019). Thus, Texas law will determine the effect the Agreement has on the parties. *Tellez v. Int'l Tutoring, Services, LLC*, No. 3:20-CV-3380-K-BK, 2021 WL 4808652, at *2 (N.D. Tex. July 16, 2021) ("When evaluating an arbitration agreement in Texas, Texas contract law applies."), *report and recommendation adopted*, No. 3:20-CV-3380-K-BK, 2021 WL 4807641 (N.D. Tex. Aug. 11, 2021); *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). In Texas, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (quoting *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002)).

The Court begins its analysis of the Agreement's validity by citing from the Agreement itself. It is uncontested that the Agreement contains the following language:

> The Parties agree that, to the fullest extent permitted by law, any and all claims or controversies between them (or between Employee and any present or former officer, director, agent, or employee of the Company or any parent, subsidiary, or other entity affiliated with the Company) relating in any manner to the employment or the termination of employment of Employee, including claims or controversies that arose, existed, or accrued prior to the signing of this Agreement (whether known or unknown at the time of signing), that are currently pending as of the

>signing of this Agreement, and that may arise or accrue after the signing of this Agreement, including claims that may arise or accrue during future assignments, engagements, or employment with the Company, and including but not limited to the interpretation, applicability, or enforceability of this Agreement, shall be resolved by final and binding arbitration.

(Dkt. #39-1 at p. 5).

From its terms, the Agreement between Plaintiffs and Crawford Co. contains a mutual promise that each party will arbitrate a variety of claims, including those related to compensation (*See* Dkt. #39-1 at p. 5). Further, neither the Signatory Plaintiffs nor the Defendants dispute that the Agreement was duly executed (*See, e.g.*, Dkt. #39-1 at p. 7). Thus, in the absence of any argument to the contrary presented by Plaintiffs, Defendants have met their initial burden to prove a valid arbitration agreement exists. *See Ron v. Ron*, 836 F. App'x 192, 196 (5th Cir. 2020) (per curiam); *Corsaro v. Columbia Hosp. at Med. City Dall. Subsidiary LP*, No. 3:21-CV-01748-N, 2021 WL 6135342, at *3 (N.D. Tex. Dec. 29, 2021).

### B.     Is there sufficient evidence that the arbitration agreement applies to threshold arbitrability questions?

As noted above, parties may delegate threshold arbitrability questions to the arbitrator by expressly or implicitly agreeing to a delegation clause by "clear and unmistakable" evidence. *Henry*, 586 U.S. at 69; *see also Gay v. Manch. Mgmt., LLC*, No. 3:18-CV-1378-D, 2018 WL 5255267, at *5 (N.D. Tex. Oct. 22, 2018). Such "clear and unmistakable" evidence exists where a party expressly incorporates the American Arbitration Association ("AAA") rules. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 746 (5th Cir. 2018) ("[E]xpress incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

Here, the Agreement contains express language which incorporates the AAA guidelines by reference: "Except as specifically provided herein, any arbitration proceeding shall be conducted

in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ('the AAA Rules'), available at www.adr.org/rules or provided upon request by the Company" (Dkt. #39-1 at p. 5). The Agreement also mandates that issues related to "the interpretation, applicability, or enforceability of this Agreement shall be resolved by final and binding arbitration" (*See* Dkt. #39-1 at p. 5). This language constitutes clear and unmistakable evidence that the parties agreed to delegate issues of arbitrability to the arbitrator. *See id*. Thus, there exists sufficient evidence that the Agreement applies to threshold arbitrability questions.

### III.   May Crawford CAT enforce the Agreement against Plaintiffs?

Having found that a valid agreement to arbitrate threshold issues of arbitrability exists between Plaintiffs and Crawford Co., the Court must next determine whether Crawford CAT, a non-signatory to the Agreement, can enforce the Agreement against the Signatory Plaintiffs. This is a rare yet entirely possible circumstance, as "[a]n agreement to arbitrate not only attaches to one who has personally signed the written arbitration agreement but may also bind a non-signatory under principles of contract law and agency." *Rubiola*, 334 S.W.3d at 224. A total of six theories control whether non-signatories may enforce arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). Defendants argue that Crawford CAT benefits from the third-party beneficiary doctrine and may successfully enforce arbitration against Plaintiffs on that basis.

"In determining whether the parties to a contract intended to benefit a third party, courts look to the entire agreement, giving effect to all of its provisions." *Allen v. W&T Offshore, Inc.*, No. 3:18-CV-00305, 2019 WL 7040441, at *2 (S.D. Tex. Nov. 19, 2019), *report and recommendation adopted*, No. 3:18-CV-00305, 2019 WL 7020204 (S.D. Tex. Dec. 20, 2019); *Weatherford Int'l, LLC*

*v. Binstock*, 452 F. Supp. 3d 561, 574 (S.D. Tex. 2020) ("Generally, a party to a contract is a signatory party, but the contract may name other parties who have the power to enforce it."). In this case, the Agreement expressly provides that employees who execute it agree to arbitrate their claims against Crawford Co. and "any parent, subsidiary, or other entity affiliated with" Crawford Co. (Dkt. #39-1 at p. 5). The Court finds that this provision enables Crawford CAT to utilize its "affiliation" with Crawford Co. to enforce the Agreement against the Signatory Plaintiffs. *Rubiola*, 334 S.W.3d at 225 ("Because the arbitration agreement expressly provides that certain non-signatories are considered parties, we conclude that such parties may compel arbitration under the agreement.").

To establish the requisite "affiliation" between the two Defendants, the Court need not venture further than Plaintiffs' Complaint, which details the interconnected nature of the entities and argues that they are so related as to constitute "a single employer under the FLSA" (Dkt. #1 at p. 7). The Complaint alleges that both Defendants would routinely share email addresses, assistant directors, websites, and payment obligations, among other things (Dkt. #1 at pp. 5–7). This relationship constitutes an "affiliation" sufficient to extend enforceability privileges to Crawford CAT.

Furthermore, Plaintiffs do not dispute that Crawford CAT is a party to the Agreement and may enforce arbitration in an identical manner to Crawford Co. Rather, Plaintiffs exclusively argue that both Defendants cannot enforce the Agreement due to its unconscionability.[2] Thus, the Court

---

[2] Plaintiffs did not address Defendants' argument that Crawford CAT may enforce the Agreement. Thus, the Court presumes that Plaintiffs do not controvert the facts set out by Defendants and have no evidence to offer in opposition to their argument. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion."); *see also Rich v. Columbia Med. Ctr. of Plano Subsidiary, L.P.*, No. 4:19-CV-404, 2020 WL 954737, at *2 (E.D. Tex. Feb. 27, 2020).

9

declines to "second-guess [the Signatory Plaintiffs'] decision to be bound" by the Agreement and their express authorization that an entity affiliated with Crawford Co. may enforce it. *See Allen*, 2019 WL 7040441, at *2.

IV. **Is the Agreement unconscionable or unenforceable by its terms?**

The Court next addresses whether Plaintiffs have successfully raised a conscionability argument against the Agreement which precludes arbitration altogether. In determining whether a conscionability argument should be reserved for the arbitrator, courts must clearly "distinguish[] between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (per curiam) (internal quotations omitted). If "a court determines that there is a properly formed agreement to arbitrate, 'any remaining arguments that target the validity [or enforceability] of the contract . . . are questions for the arbitrator.'" *Sitzman v. EK Real Est. Servs. of NY LLC*, No. 3:21-CV-2666-E, 2022 WL 17853214, at *4 (N.D. Tex. Dec. 21, 2022) (quoting *Edwards*, 888 F.3d at 744).

Crucial to this analysis is the Court's recognition that procedural and substantive conscionability challenges go to enforceability under Texas law, not contract formation. *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 502 (Tex. 2015) ("An arbitration agreement is unenforceable if it is procedurally unconscionable, substantively unconscionable, or both."); *Seifert v. United Built Homes, LLC*, 684 F. Supp. 3d 555, 564 (N.D. Tex. 2023). Thus, when a party contests the conscionability of an agreement to arbitrate which sends threshold arbitrability questions such as "enforceability" to arbitration, it must take care to set its argument apart from matters rightfully handed over to the arbitrator. *Edwards*, 888 F.3d at 746. ("Edwards's unconscionability arguments target the . . . arbitration agreement, but he fails to challenge the delegation clause. Therefore, we treat the delegation clause as valid. Edwards's remaining

arguments regarding the validity of the arbitration agreement . . . should be addressed by the arbitrator."); *Chlarson v. EK Real Est. Services of NY, LLC*, No. 5-21-CV-01046-XR, 2022 WL 2392648, at *8 (W.D. Tex. July 1, 2022) (holding that an unconscionability argument against an arbitration clause failed to implicate the validity of the delegation clause and was therefore "founded on an issue that is for the arbitrator"). If the issue of conscionability is raised to attack the entire arbitration clause itself, rather than the validity or enforceability of the delegation clause in particular, it should ordinarily be resolved by the arbitrator and not the Court. *See Rent-A-Center., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *Sitzman*, 2022 WL 17853214, at *8.

Here, Plaintiffs allege that the Agreement is unconscionable and cannot be enforced because the Agreement (1) provides the prevailing party with attorneys' fees; (2) requires Plaintiffs to pay half of the costs of the arbitrator, forum, and filing fees; and (3) requires all arbitration hearings to be conducted in Atlanta, Georgia, which is approximately 800 miles from the call center where the Plaintiffs worked (Dkt. #50 at p. 10). And, "[l]ike the plaintiff in *Rent-A-Center*, Plaintiffs' 'substantive unconscionability argument assails arbitration procedures called for by the contract,' like the location of arbitration and the allocation of arbitration fees . . . ." *Sitzman*, 2022 WL 17853214, at *8 (citation modified) (quoting *Rent-A-Center*, 561 U.S. at 74). The Supreme Court in *Rent-A-Center* saw fit to send these issues to arbitration under circumstances similar to this case, and this Court follows suit. 561 U.S. at 74.

In essence, Plaintiffs contest the enforceability of certain provisions of the Agreement, rather than the enforceability of the delegation clause itself. This is so because the delegation clause consists of a specific portion of an agreement—it is rightly defined as the contractual provision that empowers the arbitrator to decide "whether a given claim must be arbitrated." *Kubala v. Supreme*

11

*Prod. Services, Inc.*, 830 F.3d 199, 202 (5th Cir. 2016); *see Rent-A-Center*, 561 U.S. at 74. In other words, the delegation clause is a specific "agreement to arbitrate arbitrability." *Chatman v. Jimmy Gray Chevrolet, Inc.*, No. 316CV00008GHDSAA, 2016 WL 4975044, at *7 (N.D. Miss. Sept. 12, 2016). As this Court has repeatedly emphasized, district courts must "consider the [delegation] clause to be valid and compel arbitration" absent the presence of a challenge aimed at the clause itself. *Edwards*, 888 F.3d at 738 ("Challenges to the arbitration agreement as a whole are to be heard by the arbitrator."). Because Plaintiffs' unenforceability arguments do not touch on the delegation clause and instead target the Agreement at large, they must be submitted to the arbitrator.[3]

In its response and sur-reply, Plaintiffs do "not address the delegation clause, let alone challenge it." *Marquez v. US Foods, Inc.*, No. 3:23-CV-2455-K, 2024 WL 3625674, at *7 (N.D. Tex. July 31, 2024). Even Plaintiffs' argument against the arbitration's particular venue "assails the arbitration clause itself[,] not the delegation clause." *Chlarson*, 2022 WL 2392648, at *8 (holding that a plaintiff's policy argument regarding venue did not specifically challenge an arbitration agreement's delegation clause). At best, Plaintiffs' argument implicates specific provisions of the Agreement unrelated to the delegation clause, and at worst, the argument expressly seeks to

---

[3] *See, e.g., Rent-A-Ctr.,* 561 U.S. at 74 (holding that a party's failure to challenge "the delegation provision by arguing that [issues related to a fee-splitting arrangement] *as applied* to the delegation provision rendered *that provision* unconscionable" removed the issue from a court's consideration); *Predmore v. Nick's Mgmt., Inc.*, No. 3:20-CV-00513-X, 2021 WL 409736, at *4 (N.D. Tex. Feb. 4, 2021) ("[T]his Court's analysis of [a party's] unconscionability arguments hinges on whether they are challenges to the contract in its entirety or to the delegation clause specifically."); *Seifert*, 684 F. Supp. 3d at 567 (finding that a plaintiff's "unenforceability argument" over the "cost-splitting arrangement" was delegated to the arbitrator because it was not focused on the delegation clause itself); *Wealth Assistants LLC v. Thread Bank*, No. CV H-24-0040, 2024 WL 2980812, at *9 (S.D. Tex. June 13, 2024) (analyzing Tennessee law, which similarly holds that unconscionability issues are matters of enforceability, to hold that "[b]ecause the court has concluded that the parties formed an agreement to arbitrate, and that agreement contains a delegation clause that transfers questions of arbitrability to the arbitrator, the court may not consider challenges to the validity or enforceability of either the transaction as a whole, or the agreement to arbitrate").

invalidate the Agreement as a whole.[4] Because the Agreement incorporated the AAA guidelines and further assigned matters relating to the enforceability of the Agreement to arbitration, the Court submits Plaintiffs' unconscionability arguments to the arbitrator (Dkt. #39-1 at p. 5).

## V.     What happens to the Non-Signatory Plaintiffs?

Defendants ask that this entire case be stayed pending the outcome of arbitration for two independent reasons. First, Defendants claim that a stay is required under 9 U.S.C. § 3 (Dkt. #39 at p. 10). In the alternative, Defendants argue that a discretionary stay is warranted under the facts of this case (Dkt. #51 at p. 5). Plaintiffs raise a shield of caselaw against Defendants' request, arguing that Defendants' proposed stay is inappropriate given the precedent set by other district courts faced with similar circumstances (Dkt. #50 at pp. 5–6).

The FAA mandates, upon application of a party, a stay of the legal proceedings if there is an issue referable to arbitration. 9 U.S.C. § 3. Traditionally, federal courts applied the FAA, including its mandatory stay provision, exclusively to signatory parties of an arbitration agreement. *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001). This general rule was modified by the Supreme Court in *Arthur Andersen LLP v. Carlisle*, where it held that applicable state law may lead a court to conclude that non-signatories are bound by the FAA. 556 U.S. 624, 630 (2009). Even before that decision was issued, however, the Fifth Circuit endorsed a three-factor test to help determine when a non-signatory's claims necessitated the issuance of a mandatory stay. *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). That test remains applicable today, and strongly encourages a stay of the legal proceedings where the

---

[4] Plaintiff's response includes the following language, which has been modified for readability: "Defendants' Arbitration Agreements are unconscionable;" "The Arbitration Agreements are substantively unconscionable;" "A court may find an arbitration agreement is entirely unenforceable because it contains an unconscionable provision;" "Forum selection clause renders Agreements unconscionable" (Dkt. #50 at pp. 7–9).

following elements are met: (1) the arbitrated and litigated disputes involve the same operative facts; (2) the claims asserted in the arbitration and litigation are inherently inseparable; and (3) the litigation will have a critical impact on the arbitration. *Id.* Plaintiffs argue that the claims held by non-signatory parties do not meet the final two factors and therefore do not warrant a mandatory stay (Dkt. #50 at p. 6).

### A.     Do the claims share the same operative facts?

Defendants argue that every claim in this case is concerned with FLSA overtime pay violations and that they also arose under the same or similar conditions (Dkt. #51 at p. 5). Plaintiffs do not refute this assertion (*See* Dkt. #52). As a result, the first factor supports the issuance of a stay of the proceeding. *See Matthews v. Priority Energy Servs., LLC*, No. 6:15-CV-448-RWS-KNM, 2016 WL 7633990, at *4 (E.D. Tex. Dec. 2, 2016), *report and recommendation adopted*, No. 6:15-CV-448-RWS-KNM, 2017 WL 26080 (E.D. Tex. Jan. 3, 2017).

### B.     Are the claims inherently inseparable?

Defendants argue that Plaintiffs' claims are inherently inseparable because they rest "on the same liability of facts" (Dkt. #51 at p. 5). Plaintiffs contend in the alternative that their claims are not inherently inseparable because they each allege violations of overtime "for a specific period of their own employment with Defendants" (Dkt. #50 at p. 6). Defendants' legal conclusion is unsupported. In *Vallejo v. Garda CL Sw., Inc.*, a district court was tasked with applying the holding from *Waste Management* to an FLSA class concerned with unpaid overtime. No. CIV.A. H-12-0555, 2013 WL 6190175, at *6 (S.D. Tex. Nov. 26, 2013). The district court decided that the FLSA claims were not inherently inseparable, as each plaintiff sought relief for the violation of his own individual right to overtime pay. *Id.* In its decision, the court emphasized the fact that the non-signatories did not seek relief for the defendant's failure to pay the signatory plaintiffs, and vice versa. *Id.*

A similar result was reached in *Matthews*, which involved a district court's analysis of the same FLSA issue. 2016 WL 7633990, at *5. There, the court determined that "[p]laintiffs are each seeking relief for the violation of his own right to overtime pay," which rendered their claims not "inherently inseparable." *Id.* The pattern outlined by *Vallejo* and *Matthews* is not upset by the facts presented here. Rather, like the plaintiffs in those cases, the Non-signatory Plaintiffs are similarly seeking recovery for individual, personal violations of the FLSA. Their claims are not inherently inseparable from the claims of those who signed the Agreement. Thus, the second factor weighs against a stay of the proceeding.

### C. Do the claims have a critical impact on the arbitration?

Neither party specifically alleges that the litigation will undermine Defendants' ability to arbitrate their claims with the Signatory Plaintiffs. Furthermore, the Court can point to no factual dissimilarities which preclude it from following the precedent set by *Vallejo* and *Matthews*. Thus, because "[e]ach plaintiff's claim for the violation of his own right to overtime pay is not dependent on the others," the Court finds that Defendants and Signatory Plaintiffs "can still have a meaningful arbitration despite the result of litigation." *Matthews*, 2016 WL 7633990, at *6. This finding results in the third factor weighing against a stay of the proceeding. Therefore, "[e]ven if a signatory defendant can invoke a mandatory stay under 9 U.S.C. § 3 on a non-signatory plaintiff, Defendants cannot here because two out of the three factors weigh against issuing a mandatory stay." *Id.*

### D. Is a discretionary stay warranted?

As noted above, Defendants argue that a discretionary stay is warranted if a mandatory stay is not (Dkt. #51 at p. 5). Plaintiffs ask this Court to find that a discretionary stay would not serve

the interest of judicial economy and is unnecessary in light of the *Waste Management* factors (*See* Dkt. #50 at pp. 5–6).

The Court declines to issue a discretionary stay under the facts presented, as doing so would not be in the interest of efficient control or management of the docket. The *Vallejo* court held that "if allowing the . . . litigation to continue will not disrupt, conflict with, or undermine the arbitration," then the record does not support granting a discretionary stay. *Vallejo*, 2013 WL 6190175, at *7. The Court agrees. Because a majority of the *Waste Management* factors weigh against staying the case, the Court declines to issue a discretionary stay. *See Matthews*, 2016 WL 7633990, at *6.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. #39) is hereby **GRANTED in part and DENIED in part**.

Accordingly, it is further **ORDERED** that this case is **STAYED** as to the Signatory Plaintiffs exclusively, pending the outcome of arbitration.

Furthermore, the case remains open as to the Non-signatory Plaintiffs.

**IT IS SO ORDERED.**

SIGNED this 2nd day of February, 2026.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE